Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| AMERICAN PAPER CORP.<br><br>Recurrida<br><br>v.<br><br>JUNTA DE SUBASTAS DE LA ADMINISTRACIÓN DE SERVICIOS GENERALES DE PUERTO RICO<br><br>Recurrente | KLRA202400127 | Revisión procedente de la Junta Revisora de Subastas de la Administración de Servicios Generales<br><br>Caso núm.: JR-24-101<br><br>Sobre: Adquisición de papel en rollo para el Negociado de la Lotería adscrito al Departamento de Hacienda del Gobierno de Puerto Rico |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pagán Ocasio, el Juez Marrero Guerrero y la Jueza Boria Vizcarrondo.

Sánchez Ramos, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 25 de abril de 2024.

Luego de que la Administración de Servicios Generales de Puerto Rico (la "Agencia") adjudicara una subasta, y como resultado de un recurso interno de apelación administrativa, se anuló la misma, al concluirse que eran defectuosas las ofertas de todos los licitadores. La Agencia nos solicita la revisión de esta determinación; según se explica a continuación, concluimos que no se demostró que el ente apelativo administrativo hubiese cometido error alguno.

I.

En octubre de 2023, la Junta de Subastas de la Agencia (la "Junta de Subastas") publicó una Invitación a Subasta Formal 24J-05210 (la "Subasta"), para la adquisición de papel en rollo para el Negociado de la Lotería adscrito al Departamento de Hacienda del Estado Libre Asociado de Puerto Rico. El pliego de la Subasta contenía las instrucciones, formularios, requisitos, especificaciones,

términos y condiciones para presentar la oferta. También disponía los criterios de evaluación y adjudicación de la oferta. El referido pliego disponía, entre otras cosas, lo siguiente (énfasis en el original):

### III. CONDICIONES GENERALES

### 4.  TÉRMINO DE ENTREGA

El licitador deberá informar en su oferta el término en que se entregarán los bienes, en que se completarán las obras o se presentarán los servicios incluidos en su oferta indicando los días, semanas o meses. El licitador no podrá incluir ningún costo adicional al precio ofertado por concepto de gastos relativos a la entrega del bien adquirido, no obstante, deberá desglosar el detalle del precio ofertado.

[…]

Las entidades requirentes podrán establecer el término de entrega de los bienes, obras o servicios licitados, de acuerdo con su necesidad.

[…]

### 8.  GARANTÍA

Todo licitador deberá incluir con su oferta, copia fiel y exacta de la garantía, emitida por el manufacturero del producto y servicio, la cual detalle de forma clara y precisa el periodo específico a los términos aplicables a cada garantía, su vigencia, términos, sus limitaciones y condiciones, los trámites requeridos para reclamar la garantía, el nombre de la entidad que proveerá el servicio de reemplazo, subsanación, corrección o reparación del producto o el servicio y los términos de entrega e instalación del producto o servicio.

La garantía del producto deberá detallar claramente que incluye. El licitador se obligará a honrar la garantía dispuesta por el manufacturero.

[…]

En las "Especificaciones" y "Condiciones Especiales" de este pliego de subasta formal se podrá establecer la garantía mínima (periodo mínimo de garantía) que requiere la ASG para el bien, obra o servicio.

En la columna identificada como "Garantía" incluida en la Tabla de Ofertar, el licitador hará constar la garantía ofrecida para el bien, obra o servicio ofertado (qué incluye y el periodo de garantía): el licitador podrá ofrecer mayor garantía a la requerida por la ASG, pero no podrá ofrecer una garantía menor.

**El ofrecimiento por parte del licitador de una garantía menor a la requerida por la ASG para el bien, obra o servicio, podrá conllevar el rechazo de la oferta.**

**En cualquier caso, que, en las "Especificaciones" y "Condiciones Especiales" de este pliego de subastas formal la ASG no establezca garantía mínima para el bien, obra o servicio, SERÁ OBLIGACIÓN DEL LICITADOR detallar en la Tabla de Ofertar la garantía incluida para el bien, obra o servicio ofertado.**

**En cualquier caso, que, en las "Especificaciones" y "Condiciones Especiales" de este pliego de subasta formal la ASG se establezca garantía mínima para el bien, obra o servicio, y el licitador no indique un término distinto en la Tabla de Ofertar, se entenderá que con la firma de la Oferta acoge dicha garantía mínima como suya.**

**SERÁ OBLIGACIÓN DEL LICITADOR detallar en la Tabla de Ofertar la garantía incluida para el bien, obra o servicio ofertado en término de días, meses, semanas o años.**

## 9.   EVALUACIÓN Y ADJUDICACIÓN

### A. EVALUACIÓN

Al evaluar las ofertas el Especialista de Compras y Subastas o el Comité Evaluador de Subastas podrán tomar en consideración los siguientes criterios:

   a. La exactitud con la cual el licitador ha cumplido con las especificaciones, los términos y las condiciones del pliego de la subasta formal.
   b.
   c. [...]Si el precio es competitivo y comparable con en el prevaleciente en el mercado. [...]
   d. [...]
   e. [...]
   f. La capacidad económica y financiera, así como la trayectoria y experiencia previa del licitador para proveer estos servicios o bienes y cumplir con los términos de entrega y garantías del producto o servicio.
   g. El período específico o los términos aplicables a cada garantía, sus limitaciones y condiciones, los pasos requeridos para reclamar la garantía, qué entidad proveerá el servicio de reemplazo, subsanación corrección o reparación del bien o el servicio.
   h. [...]
   i. Cualquier otro criterio pertinente que represente el mejor valor para el Gobierno de Puerto Rico.

[...]

La Junta de Subastas adjudicará la *buena pro* al licitador responsivo que haya ofertado el mejor valor. **El mejor valor no necesariamente será la oferta o propuesta que presente el más bajo costo o precio.** (Énfasis en el original).[1]

Además, el Pliego de la Subasta estableció:

### II. OFERTAS ADMISIBLES E INADMISIBLES

### 2. OFERTAS NO RESPONSIVAS O INACEPTABLES

Al hacer su oferta, el licitador se limitará a ofrecer u ofertar lo que se le solicita dentro de las especificaciones y las condiciones establecidas en el pliego de subasta. Las especificaciones establecen requisitos mínimos. **Cualquier oferta que sobrepasa las especificaciones solicitadas podrá ser aceptada, siempre y cuando no altere sustancialmente las características de los bienes, obras o servicios no profesionales solicitados en el pliego de subasta formal, de forma tal que pueda interpretarse como *competencia desleal.***

La Junta de Subastas no considerará las ofertas que añadan o eliminen especificaciones o condiciones requeridas en el pliego de subasta, o que las alteren, modifiquen o varíen. Tampoco se considerarán las ofertas que contengan frases, párrafos o comentarios ambiguos, incompletos, indefinidos o que resten certeza a la oferta.[2]

### 3. DESVIACIONES PERMISIBLES

La Junta de Subastas podrá aceptar desviaciones mínimas en las especificaciones, términos y condiciones de las ofertas recibidas, cuando:

a. Ningún licitador ofrezca el bien o servicio no profesional con las especificaciones requeridas;
b. No se afecte el propósito original a que está destinada la subasta; y,
c. El precio cotizado sea competitivo y comparable con el prevaleciente en el mercado.

**La Junta de Subastas se reserva el derecho de obviar cualquier informalidad o diferencia de menor importancia en los términos y condiciones si cumple con el propósito para el que se solicitan y resulta beneficioso para el Gobierno de Puerto Rico. Las desviaciones no podrán afectar sustancialmente la calidad, capacidad o características esenciales de los artículos o servicios solicitados.**

[…]

---

[1] Véase, Apéndice IV del recurso, págs. 29-32.
[2] *Íd.*, págs. 26-27.

**6. RECHAZO GLOBAL**

Se podrá rechazar cualquiera o todas las ofertas para la subasta formal en las situaciones siguientes:

a. Cuando los licitadores no cumplan con alguno de los requisitos, especificaciones o condiciones estipuladas.[3]

El pliego de Subasta luego fue objeto de una enmienda para aclarar la vigencia del contrato y "que las entregas serán parciales, de acuerdo a la necesidad de la agencia".[4]

El Acto de Apertura se celebró el 28 de noviembre de 2023, al cual comparecieron dos licitadores: American Paper Corporation ("American") y RR Donnelley Puerto Rico (la "Agraciada").

El 27 de diciembre de 2023, la Junta de Subastas emitió una *Resolución de Adjudicación* en la que adjudicó la buena pro de la subasta a la Agraciada; se concluyó que:

[…] la oferta cumple con lo requerido en el pliego de subasta, las condiciones solicitadas y ofrece el mejor valor […], acogiendo así la recomendación del Área de Adquisiciones.

Este licitador presentó junto a su oferta la fianza de licitación requerida; la carta de presentación; la oferta firmada; la tabla de cotizar; literatura de los productos ofertados; resolución para validar el 2% de preferencia; copia de certificación del RUL vigente y evidencia de registro en el SAM.

La oferta presentada fue por $208,733.70. La garantía ofrecida es de ciento ochenta (180) días, lo que nos brinda un término específico, contrario a la otra oferta recibida. La marca es Domtar. La entrega es de 4 a 6 semanas.

Según se desprende de su carta de presentación, el licitador tiene más de 60 años de experiencia, dando servicios en el sector gubernamental, así como a clientes en el área de finanzas, salud, manufactura y distribución.

Por su parte, el Negociado indica que cumple con las especificaciones y se encuentra dentro del presupuesto.

El inciso 9 de la Sección III del Pliego de Subasta dispone que: "La Junta de Subastas adjudicará la

---

[3] *Íd.*, págs. 26-27.
[4] *Íd.*, pág. 51.

*buena pro* al licitador responsivo que haya ofertado el mejor valor."

La compañía aquí mencionada, satisface las necesidades y requisitos de la Agencia Requirente. Asimismo, si bien no es el precio más bajo, este Licitador es el único que cumplió con lo solicitado en el Pliego, por lo que esta Junta de Subastas, a la luz de las recomendaciones recibidas, le adjudica la *buena pro* de esta subasta.

En cuanto a la oferta sometida por American, licitadora no agraciada, la Junta de Subastas consignó que:

El licitador incluyo la fianza requerida, copia del certificado del RUL, carta de presentación, la tabla de ofertar, el Anejo I firmado y una hoja de datos técnicos.

El precio total ofertado al sumar las partidas es $176,927.00 aunque en su tabla indicó $173,388.46. Entendemos que la diferencia matemática surge porque aplicó el 2% solicitado de Ley de Preferencia al total indicado. Ahora bien, la Resolución incluida con el propósito de que se le otorgara ese 2% venció el 2 de junio de 2023.

En cuanto a la garantía, aunque en la Sección 8 de las Condiciones Generales del Pliego indica, en negrillas y subrayado que "**SERÁ OBLIGACIÓN DEL LICITADOR detallar en la Tabla de Ofertar la garantía incluida para el bien, obra o servicio ofertado en término de días, meses, semanas o años**", no entendemos porque en su tabla indica solamente "100% garantizado", lo que a todas luces no cumple con lo que se requirió. Además de que no fue la instrucción, nos es imposible determinar cuánto tiempo dura ese "100%".

En el encasillado de la Tabla relacionado a la entrega, indica "primera orden en 45 días" y que el restante "según requerido". Estaríamos presumiendo que eso equivale a que esas restantes serían de inmediato, pero tampoco nos queda claro.

El inciso 2 de la Sección II en el Pliego indica que la Junta de Subastas no considerará las ofertas que añadan o eliminen especificaciones o condiciones requeridas en el pliego de subasta, o que las alteren, modifiquen o varíen. Tampoco se considerarán las ofertas que contengan frases, párrafos o comentarios ambiguos, incompletos, indefinidos o que resten certeza a la oferta.

> Ante lo discutido en esta Sección, se rechaza esta oferta.[5]

La Junta de Subastas le advirtió a la parte adversamente afectada sobre su derecho a solicitar la revisión de lo actuado ante la Junta Revisora de la Agencia (la "Junta Revisora"), dentro del término de veinte (20) días calendario, contados a partir del depósito en el correo federal o envío por correo electrónico de la notificación de la *Resolución de Adjudicación.*[6]

El 4 de enero, American presentó una solicitud de revisión ante la Junta Revisora (la "Revisión"); planteó que:

> a. Indican que American presentó una Resolución del 2% Ley de Preferencia vencida. Nuestra ley de preferencia se encuentra bajo revisión y renovación ante el Departamento de Desarrollo Económico y Comercio. La junta de inversión para la industria puertorriqueña provee una certificación de vigencia de extensión de vigencia a resolución concedida; documentos que American Paper Corp. incluyó en dicha subasta.
>
> b. Garantía – aclaramos que en la tabla de ofertar detallamos que nuestro producto es "100% garantizado" nos referimos a que el papel en rollos marca Soporset es un producto totalmente garantizado en su funcionamiento y calidad por tiempo indefinido. Esto significa que American Paper Corp. se responsabiliza por cualquier alegación relacionado al producto. Nuestro papel marca Soporset ha sido usado por Lotería de PR por los pasados 20 años y no ha existido ningún inconveniente.
>
> c. Entrega – en la tabla de ofertar, indicamos que la primera orden llega en 45 días y el restante es "según requerido" nos referimos a que American Paper tiene capacidad de almacenamiento. Nos comprometemos a tener el primer embarque en 45 días o menos y el restante de las libras las mantenemos en nuestro almacén en Puerto Rico para suplirle a la Lotería de Puerto Rico al momento de su necesidad. Nuevamente recalcamos que nuestro compromiso con Lotería PR lleva más de 30 años y así lo hemos manejado diligentemente.[7]

---

[5] *Íd.,* págs. 53-54.
[6] *Íd.,* pág. 55.
[7] *Íd.,* págs. 58-59.

American precisó, además, que "no está añadiendo, ni eliminado especificaciones o condiciones requeridas. Estamos garantizando un material ya validado y requerido por Lotería de Puerto Rico. La marca Soporset cumple con la exigencia y nosotros como empresa cumplimos fielmente a lo requerido".[8]  En consecuencia, solicitó a la Junta Revisora que se dejara sin efecto la adjudicación y que, a su vez, se le adjudicara la Subasta.

La Agencia se opuso a la Revisión; planteó que American 1) no certificó a la Junta Revisora que notificó debidamente la Revisión, 2) no incluyó copia de la *Resolución de Adjudicación* que pretendía impugnar ni copia del sobre con la evidencia de la fecha en que fue depositada en el correo postal o correo electrónico, 3) no incluyó en su escrito una relación fiel y concisa de los hechos e incidentes procesales pertinentes, y 4) no discutió las razones por las cuales impugnó la adjudicación de la Subasta, ni incluyó copia de su oferta.

Mediante un dictamen notificado el 20 de febrero (la "Decisión"), la Junta Revisora determinó que, por defectos en <u>ambas</u> propuestas, procedía el Rechazo Global de las ofertas presentadas. En cuanto a American, determinó que su oferta era ambigua.  En cuanto a la Agraciada, razonó que la garantía ofrecida no cumplía con lo requerido por la Sección III (8) del Pliego de Subastas, así como por la legislación y reglamentación aplicable.

Inconforme, el 11 de marzo, la Agencia presentó el recurso que nos ocupa; formula los siguientes señalamientos de error:

1. Erró la Junta Revisora de Subastas de la Administración de Servicios Generales al emitir una Resolución sin jurisdicción para ello, toda vez que la parte adversamente afectada de la Resolución de Adjudicación que emitió la Junta de Subastas no cumplió con un requisito de carácter jurisdiccional según se establece en el Art. 65 de la Ley Núm. 73-2019.

---

[8] *Id.*, pág. 59.

2. En la alternativa, erró la Junta Revisora para acoger un recurso de revisión administrativa sin que la parte recurrente acompañara la resolución de adjudicación impugnada ni la oferta que presentó ante la Junta de Subastas en violación al Art. 5.4 del Reglamento Núm. 9230.

3. Erró la Junta Revisora y abusó de su discreción al emitir un Rechazo Global de todas las ofertas en exceso de su autoridad legal conferida en ley y reglamento.

Mediante una *Resolución* emitida el 13 de marzo, concedimos término a los licitadores para consignar su postura; expirado el mismo sin que comparecieran, resolvemos.

II.

En Puerto Rico no existe legislación especial que reglamente los procedimientos de subastas dirigidos a la adquisición de bienes y servicios para las entidades gubernamentales. *Caribbean Communications v. Pol. de PR*, 176 DPR 978, 993 (2009). La Ley 38-2017 ("LPAU"), según enmendada, expresamente excluye de su aplicación a los procedimientos informales de subasta. 3 LPRA secs. 9641, 9659, 9672. No obstante, reglamenta las etapas de reconsideración y revisión judicial. *Íd.*; *Cotto v. Depto. De Educación*, 138 DPR 658, 662-663 (1995). Como resultado, las agencias gubernamentales están llamadas a adoptar las normas a seguir en sus propios procedimientos de adjudicación de subastas. 3 LPRA sec. 9642; *Caribbean Communications*, 176 DPR a las págs. 993-994, citando a *Perfect Cleaning v. Cardiovascular*, 162 DPR, 745, 757 (2004).

Estas normas de adjudicación, así como toda la reglamentación y legislación referente a los procedimientos de subastas del Estado Libre Asociado de Puerto Rico están revestidos del más alto interés público. *CD Builders v. Mun. Las Piedras*, 196 DPR 336, 343-344 (2016). El propósito primordial es proteger el erario fomentando la libre y diáfana competencia entre el mayor

número de licitadores posibles. Con ello, se pretende maximizar la posibilidad de obtener el mejor contrato, mientras se protegen los intereses y activos públicos. La idea es que este mecanismo aumenta la probabilidad de que se obtengan "los precios más económicos" y de que se eviten "el favoritismo, la corrupción, el dispendio, la prevaricación, la extravagancia y el descuido". *PR Eco Park et al. v. Mun. de Yauco*, 202 DPR 525, 531 (2019).

Los procedimientos de subasta y los requerimientos de propuestas son los métodos mediante los cuales el gobierno central y los municipios adquieren bienes y servicios. *Íd.* La subasta formal o mediante ofertas selladas es el procedimiento más comúnmente utilizado por las entidades gubernamentales. *Caribbean Communications*, 176 DPR a la pág. 994, citando a *R & B Power v. ELA*, 172 DPR 607 (2007).

La subasta formal comienza con la preparación del pliego de condiciones y especificaciones, seguido por la emisión de la invitación o aviso de subasta al público. Luego, los interesados someten sus propuestas selladas las cuales se hacen públicas con la celebración del acto de apertura en presencia de todos los postores. Las ofertas pasan a manos de un comité evaluador que, luego de evaluarlas, emite su recomendación para la adjudicación de la buena pro. Finalmente, el procedimiento concluye con la adjudicación de la buena pro y la notificación de esta a todos los postores. *Íd.*, pág. 995.

La característica distintiva de la subasta formal es que las ofertas se presentan selladas. Una vez abiertas las ofertas, no se admiten modificaciones a las mismas, pues no hay cabida para la negociación entre las partes. *Trans Ad de PR v. Junta de Subastas*, 174 DPR 56, 66 (2008). Esta secretividad responde a la necesidad de garantizar que la competencia entre los licitadores sea efectiva y honesta, pues de esa manera se evita que un licitador con mayor

capacidad económica enmiende su propuesta para superar la de otro competidor. *Íd.*

En el contexto de las subastas gubernamentales, la Junta de Subastas de la agencia goza de amplia discreción en la evaluación de las propuestas sometidas ante su consideración. *Caribbean Communications*, 176 DPR a la pág. 1006. Por ello, en la adquisición de bienes y servicios especializados, las agencias, "con su vasta experiencia y especialización, se encuentra[n], de ordinario, en mejor posición que nosotros para determinar el mejor licitador". *Empresas Toledo v. Junta de Subastas*, 168 DPR 771, 779 (2006). Aunque se favorece la selección del licitador que ofrezca el menor costo, no hay una norma legislativa que obligue a las agencias a escoger al licitador más bajo. *Íd.*, a la pág. 782. Al momento de evaluar a los licitadores, la agencia debe procurar seleccionar al que esté mejor capacitado para proveer el bien o servicio en cuestión. *Íd.*

Precisamente por su experiencia y especialización, las agencias gozan de amplia discreción al momento de evaluar las propuestas sometidas ante su consideración. *Caribbean Communications*, 176 DPR a la pág. 1006. Los tribunales no deben sustituir el criterio de la agencia, a menos que se demuestre que la decisión fue arbitraria, caprichosa o que medió fraude o mala fe. *Íd.*; *Empresas Toledo*, 168 DPR a la pág. 783. En ausencia de estos, "ningún postor tiene derecho a quejarse cuando otra proposición es elegida como la más ventajosa". *Caribbean Communications*, 176 DPR a la pág. 1006. Cuando la agencia decide rechazar la oferta más baja, el criterio a examinar será el de razonabilidad. *Íd.*

III.

La Ley 73-2019, según enmendada, 3 LPRA sec. 9831 *et seq.* ("Ley de la Agencia"), reglamenta lo relacionado con las subastas que le corresponda realizar a la Agencia. El estatuto creó la Junta de Subastas, adscrita a la Agencia, quien adjudica las subastas a cargo

de la Agencia.  3 LPRA sec. 9836.  La Ley de la Agencia establece unos requisitos con los cuales la Junta de Subastas debe cumplir; en lo pertinente, se dispone que:

> [...]
>
> (g) Dispondrá que la garantía del producto o servicio deberá detallar claramente qué incluye y qué no incluye, presentando los costos de transporte, si alguno. A la vez, tiene que estar certificada en casos de productos, por el fabricante local o del exterior y también por su representante o distribuidor, garantizándole a la entidad gubernamental su reemplazo de partes o productos, servicios y mano de obra bajo términos claramente expuestos en la oferta del licitador e incluidos posteriormente en el contrato suscrito con el licitador agraciado.
>
> [...]
>
> (j) Solicitará a todo licitador una descripción precisa y detallada de los bienes, obras o servicios objeto de oferta, incluyendo las garantías y términos de entrega, si algunas. No aceptará que los licitadores o contratistas, incluyan descripciones genéricas o ambiguas en los términos de entrega o las garantías de sus productos y servicios en sus procesos de subasta, requerimiento de propuestas y la contratación de adquisición de productos o servicios. En ese sentido, todo licitador y contratista, según aplique, debe incluir, de forma clara y detallada, el período específico o los términos aplicables a cada garantía, sus limitaciones y condiciones, los pasos requeridos para reclamar la garantía, una descripción clara de qué entidad proveerá el servicio de reemplazo, subsanación, corrección o reparación del producto o el servicio y los términos de entrega del producto o servicio. Cualquier oferta que no cumpla con lo antes expresado, se tendrá por no sometida y la misma no podrá ser favorecida en la adjudicación de la subasta o propuesta. De igual forma, bajo ninguna circunstancia, se podrá omitir lo dispuesto en ese inciso en el proceso de contratación para la adquisición de bienes, obras o servicios no profesionales.  3 LPRA sec. 9834i.

De conformidad con lo dispuesto en la Ley de la Agencia (3 LPRA secs. 9832 y 9834a), la Agencia promulgó el *Reglamento Uniforme de Compras y Subastas de Bienes, Obras y Servicios no Profesionales de la Administración de Servicios Generales del*

*Gobierno de Puerto Rico,* Reglamento Núm. 9230 de 18 de noviembre de 2020 (el "Reglamento").

Según el Artículo 1.6(1) del Reglamento, la adjudicación se define como el "[a]cto de evaluar las ofertas o propuestas recibidas en respuesta a un pliego de subasta o una solicitud de propuestas a fin de otorgar la buena pro al licitador que mejor cumpla con los criterios, las especificaciones, las condiciones y los términos establecidos, o sea, al licitador que ofrezca el mejor valor". Además, el Reglamento define el término "mejor valor" como:

> Sera la oferta o propuesta que represente el mayor beneficio para el Gobierno de Puerto Rico; la oferta o propuesta del licitador o proponente que mejor cumpla con los requisitos establecidos en la hoja de cotización o en el pliego de la subasta o propuesta y en la cual quede establecido que el licitador o proponente ofrece el mejor bien o servicio, o que tiene la capacidad de realizar la obra de forma eficiente, al considerar todos los criterios, como lo son: inspección, pruebas, calidad, entrega, idoneidad para un propósito particular, garantías del bien o servicio y los términos bajo las cuales serían prestadas dichas garantías, ciclo de vida del bien a ser adquirido, descuentos, impacto económico en términos de creación de empleos e impacto fiscal sobre el gobierno de Puerto Rico. También, serán considerados como parte del mejor valor, los siguientes elementos: las condiciones y limitaciones de las garantías de piezas y servicios del producto o servicio ofrecido, así como el tiempo y lugar en que se honran y se ejecutan dichas garantías y el impacto fiscal sobre el gobierno de Puerto Rico del producto o servicio. Los criterios que afectaran el precio de la oferta y que se consideraran en la evaluación para la adjudicación, serán medibles de manera objetiva, como los descuentos, los costos de transporte tanto en su entrega original como para ejecutar sus garantías, y el costo de disposición del equipo, una vez termine su vida útil o utilización, entre otros criterios. El mejor valor no necesariamente será la oferta o propuesta que presente el más bajo costo o precio. Art. 1.6(41) del Reglamento.

A su vez, la Sección 7.3.17.2(h) del Reglamento dispone que la Junta de Subastas debe considerar "[e]l periodo especifico o los términos aplicables a cada garantía, sus limitaciones y condiciones, los pasos requeridos para reclamar la garantía, qué entidad proveerá

el servicio de reemplazo, subsanación, corrección o reparación del bien o el servicio".  Por su parte, la Sección 7.3.17(10) indica cuándo se puede determinar el rechazo global de las ofertas de una subasta: "[...] a. Los licitadores no cumplan con algunos de los requisitos, especificaciones o condiciones estipuladas". [...].

Mientras tanto, la Sección 10.5.3 del Reglamento establece las condiciones generales compulsorias a ser incluidas en todos los pliegos de compras, subastas o solicitud de propuestas. En particular, la Sección 10.5.3(17) dispone lo siguiente sobre la garantía de los productos o servicios a ofrecer (énfasis suplido):

> El pliego deberá expresar que todo licitador deberá incluir, de forma clara y detallada, el período específico o los términos aplicables a cada garantía, sus limitaciones y condiciones, los trámites requeridos para reclamar la garantía, una descripción clara de qué entidad proveerá el servicio de reemplazo, subsanación, corrección o reparación del producto o el servicio y los términos de entrega del producto o el servicio y los términos de entrega del producto o servicio.
>
> **La garantía del producto o servicio deberá detallar claramente qué incluye**. A su vez, la garantía tiene que estar certificada, en casos de productos, por el fabricante local o del exterior y también por su representante o distribuidor, garantizándole a la entidad gubernamental su reemplazo de partes o productos, servicios y mano de obra bajo términos claramente expuestos en la oferta del licitador.
>
> Se informará, además, que el licitador deberá asumir los costos relacionados a la garantía, incluidos los gastos de transporte o envío.
>
> Se informará a los licitadores que se considerará de manera preferente la garantía prestada en Puerto Rico a la garantía prestada en el exterior.
>
> Se requerirá a todo licitador el deber de honrar al Gobierno la garantía, si alguna, independientemente de si se compra o no a través de un distribuidor.
> **En el pliego se advertirá a todos licitador que el incumplimiento de lo antes expresado será razón de descalificación**.

En cuanto al expediente de la subasta formal, la Sección 7.3.18 del Reglamento dispone que el mismo está compuesto por, entre otros, las ofertas presentadas y la adjudicación de la subasta.

Por otra parte, la Ley de la Agencia también creó la Junta Revisora, a quien se le autorizó a revisar las determinaciones de la Junta de Subastas. 3 LPRA sec. 9837. Sobre el procedimiento de revisión ante la Junta Revisora, se dispuso, en lo pertinente, que:

> [...] la Junta Revisora podrá recibir testimonio pericial, podrá recibir y solicitar exámenes de muestras de los productos en cuestión y podrá efectuar un análisis independiente y propio de los hechos, aspectos técnicos, y los demás asuntos contenidos en el expediente de la subasta o el requerimiento en cuestión. Además, podrá revisar de forma independiente y autónoma las determinaciones de hecho y conclusiones de la Junta de Subastas de la que se origina la solicitud de revisión, siendo las mismas revisables en todos sus aspectos. 3 LPRA sec. 9838c.

La Ley de la Agencia establece, además, ciertos requisitos para las solicitudes de revisión ante la Junta Revisora:

> La parte adversamente afectada notificará copia de la solicitud de revisión administrativa a la Administración y a la Junta de Subastas correspondiente; simultáneamente notificará también al proveedor que obtuvo la *buena pro* en la subasta en cumplimiento con lo establecido en el Artículo 62 de esta Ley. Este requisito es de carácter jurisdiccional. En el propio escrito de revisión, la parte recurrente certificará a la Junta Revisora su cumplimiento con este requisito. La notificación podrá hacerse por correo certificado con acuse de recibo o por cualquier correo electrónico. De así ser solicitado por la parte adversamente afectada, la Junta de Subastas le proveerá a éste las direcciones, tanto postales como electrónicas, que los proveedores participantes le hayan informado a la Junta de Subastas durante el proceso de subasta impugnado. 3 LPRA sec. 9838.

El Artículo 5.4 del Reglamento dispone que la solicitud de revisión deberá contener:

> 1. Información sobre las partes y de sus abogados, de contar con representación legal.
>
> 2. Referencia a la notificación de adjudicación cuya revisión se solicita.

3. Se deberá incluir copia de ésta, incluyendo el sobre con la evidencia de la fecha en que fue depositada en el correo postal o correo electrónico, de ser dicha fecha distinta a la de archivo en autos de la notificación.

4. Una relación fiel y concisa de los hechos e incidentes procesales pertinentes.

5. Una discusión detallada de las razones por las cuales se impugna la adjudicación. El recurrente deberá enumerar y establecer claramente cada una de las partidas de la notificación de adjudicación que se impugna, y una discusión de las razones para la impugnación.

6. Toda aquella documentación pertinente a la adjudicación de la subasta, la cual cómo mínimo deberá incluir:

   a. Aviso de Adjudicación impugnado.
   b. Propuesta del recurrente
   c. Determinación sobre Cualificaciones (si aplica)

IV.

En primer lugar, y contrario a lo planteado por la Agencia, la Junta Revisora tenía jurisdicción para la adjudicar la Revisión. Del récord surge que American notificó oportunamente la Revisión a la Junta de Subastas así como a la Agraciada (de hecho, la Agencia no alega lo contrario) y así lo hizo constar al pie de la Revisión. Como bien razonó la Junta Revisora, "no hay alegación alguna sobre falta de notificación". No tiene razón la Agencia al plantear que la Junta Revisora carecía de jurisdicción por razón de que el lenguaje utilizado en la Revisión, para indicar a quién se cursó notificación de la misma, no se ajustara exactamente a lo dispuesto en la Ley de la Agencia.

Tampoco se afectó la jurisdicción de la Junta Revisora por el hecho de que American no incluyera con la Revisión copia de todos los documentos contemplados por el Reglamento. La Junta Revisora acertadamente razonó que este requisito no era jurisdiccional y, además, que como los referidos documentos

"forman parte del expediente de subasta que nos fue elevado", "pudo analizar los mismos".

Finalmente, tampoco podemos concluir que hubiese errado la Junta Revisora al concluir que la oferta de la Agraciada debió rechazarse. La Junta Revisora razonó que la garantía ofrecida por la Agraciada no incluyó la "información requerida por el Pliego a los efectos de 'detallar de forma clara y precisa el periodo específico o los términos aplicables". También concluyó que dicha garantía no indicaba "sus términos y condiciones, los trámites requeridos para reclamar[la], o el nombre de la entidad que proveerá el servicio de reemplazo, subsanación, corrección o reparación". Añadió que la Agraciada tampoco se comprometió a "asumir los costos relacionados a la garantía, incluidos los costos de transporte y envío, conforme requiere el inciso 8 de la Sección III del Pliego". Estimó que ofrecer una "garantía total adolece de la misma ambigüedad que la garantía" de American.

En efecto, surge del expediente que los licitadores de la Subasta debían someter, con su oferta, copia fiel y exacta de la garantía del manufacturero y consignar, "de forma clara y precisa[,] el periodo específico a los términos aplicables a cada garantía, su vigencia, términos, sus limitaciones y condiciones, los trámites requeridos para reclamar la garantía, el nombre de la entidad que proveerá el servicio de reemplazo, subsanación, corrección o reparación del producto o el servicio y los términos de entrega e instalación del producto o servicio". Resaltamos que la Agencia no ha planteado que hubiese errado la Junta Revisora al concluir que la Agraciada, en efecto, no cumplió con estos requisitos.

La Ley de la Agencia y el Reglamento son claros en cuanto al requisito de la copia de la garantía. Ambos disponen que el incumplimiento con algunos de los requisitos, especificaciones o condiciones es causa justa para su descalificación. El expediente

KLRA202400127                                                    18

revela que la Agraciada incumplió con un requisito indispensable que, de forma clara, surge del Pliego de Subasta, por lo cual no erró la Junta Revisora al concluir que no se le podía adjudicar la buena pro de la Subasta.

Finalmente, y contrario a lo planteado por la Agencia, la Junta Revisora sí tiene autoridad para determinar el rechazo global de todas las ofertas de una subasta. No existe disposición alguna que se lo prohíba y, de conformidad con la autoridad general de revisión que se le otorgó, la Junta Revisora puede determinar que ese es el remedio apropiado cuando, como ocurrió aquí, ninguno de los licitadores ha cumplido adecuadamente con los requisitos del Pliego de Subastas.

V.

Por los fundamentos anteriormente expuestos, se confirma la Resolución recurrida.

Lo acuerda y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones